**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2438

_____

BENJAMIN ZIRPOLI, individually and on behalf of all
others similarly situated

v.

MIDLAND FUNDING, LLC; MIDLAND CREDIT
MANAGEMENT, INC.
MIDLAND FUNDING, LLC.,
                                        Appellant

_____

On Appeal from United States District Court for the Middle
District of Pennsylvania
(D. C. No. 1-19-cv-01428)
District Court Judge: Honorable Jennifer P. Wilson
_____

Argued June 22, 2022

Before: McKEE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: September 1, 2022)

Kevin J. Abramowicz
Kevin W. Tucker
East End Trial Group
6901 Lynn Way
Suite 215
Pittsburgh, PA 15208

Karla Girbride                                    [ARGUED]
Public Justice
1620 L Street, N.W.
Suite 630
Washington, DC 20036

John B. Keller
Keller Keller Beck & Ross
1035 Wayne Avenue
Chambersburg, PA 17201
            *Counsel for Appellee*

Lauren M. Burnette                                [ARGUED]
Messer Strickler Burnette
12276 San Jose Boulevard
Suite 718
Jacksonville, FL 32223
            *Counsel for Appellant*

_____

OPINION

_____


McKEE, *Circuit Judge*.

Arbitration is a contractual obligation. Thus, parties to a contract may delegate **questions of arbitrability to an arbitrator. If parties clearly and unmistakably make this** choice, then district courts generally must send threshold questions of arbitrability to arbitration to comply with the parties' agreement.

Here, OneMain Financial Group legally contracted with Benjamin Zirpoli. This contract includes a clause that delegates any question of arbitrability to arbitrators. OneMain then assigned this contract to Midland Funding LLC. Litigation between Midland and Zirpoli ensued, and Midland filed a motion to compel arbitration. Zirpoli opposes that motion, arguing that Midland cannot compel arbitration because OneMain's assignment to Midland is void under Pennsylvania

2

law. We must decide if the District Court erred in not granting the motion to compel and refusing to refer the dispute to an arbitrator. For the reasons that follow, we hold that the court did err and that the motion to compel should have been granted.

**I.**

OneMain is a consumer discount company: a non-bank finance company that makes, buys, or sells consumer loans in amounts under $25,000 with combined fees, interest, charges, and other amounts that aggregate in excess of 6% per year. Zirpoli applied for and received a loan from OneMain (the "Loan"). Under the terms of the Loan, Zirpoli was to borrow $6,200.08 and repay at a rate of 26.91% (for a total of $11,364.35). His Loan was issued under the Consumer Discount Company Act (CDCA), a consumer protection statute, which creates an exception to, and is a corollary of, Pennsylvania's usury law.[1] The obligations of the Loan are governed by a disclosure statement, note and security agreement, and an arbitration agreement.

> The arbitration agreement states:
> You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.[2]

The "Definitions for Arbitration Agreement" section provides:

> "We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers. . . . "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit,

---

[1] 7 PA. STAT. AND CONS. STAT. ANN. §§ 6201–6219 (West 2022).
[2] JA 82.

or claim now or hereafter existing between You and Us.[3]

Pursuant to the terms of the agreement, a claim "includes, without limitation, anything related to":

> The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement; . . . [and] [a]ny federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws.

Midland is a Delaware limited liability corporation. Its sole business is purchasing defaulted consumer debt. After Zirpoli and OneMain executed the Loan, OneMain and Midland executed a sales agreement through which OneMain sold several delinquent accounts to Midland; those accounts included Zirpoli's Loan. Midland acquired these accounts in a sales agreement even though it did not possess a CDCA license or request approval from the Department of Banking.[4] OneMain's records show that it had charged-off Zirpoli's account with an outstanding balance of $7,391.90.

After acquiring Zirpoli's Loan from OneMain, Midland sued Zirpoli to collect the amount Zirpoli owed on the Loan. Zirpoli hired counsel and entered a defense, but Midland thereafter dismissed the suit rather than litigating. Subsequent to dismissing the litigation, Midland allegedly attempted to collect the delinquent Loan by reporting it to various consumer agencies, thereby negatively impacting Zirpoli's credit. Midland also allegedly obtained and used Zirpoli's credit report from various consumer reporting agencies.

---

[3] *Id.*
[4] The CDCA prohibits CDCA licensees from "sell[ing] contracts to a person or corporation not holding a license . . . without the prior written approval of the Secretary of Banking." 7 P.S. § 6214.I.

4

In response, Zirpoli filed this class action lawsuit in the Middle District of Pennsylvania. He alleged that Midland's collection activities including the since-dismissed lawsuit and reporting the Loan delinquency to credit agencies constituted an unlawful attempt to collect the Loan. Zirpoli contends that because Midland does not have a CDCA license and never obtained nor requested approval from the Department of Banking, Midland was not lawfully permitted to purchase the Loan. Accordingly, he argues, Midland's attempts to collect on the Loan violated several consumer protection acts.

Midland responded to the suit by filing a motion to compel arbitration and to stay the proceedings. The District Court denied this motion without prejudice, finding that it was not apparent from the face of the complaint that Zirpoli's claims were subject to a valid and enforceable arbitration agreement and that discovery was necessary. The District Court then ordered additional, limited discovery on the following issues:

- Whether the Secretary of Banking approved the purported transaction involving Midland Funding, an unlicensed consumer-discount company;
- Whether, in accordance with the terms of the sale agreement, Midland Funding obtained approval to compel arbitration with Zirpoli; and,
- Whether Midland Funding maintains a clear chain of title to the loan account.[5]

Thereafter, the District Court found that the discovery revealed that (1) the Pennsylvania Secretary of Banking did not approve the assignment between OneMain and Midland, and (2) Midland was not licensed under the CDCA during the time period at issue in this litigation.

Midland then filed a renewed motion to compel arbitration and to stay proceedings. It argued that it obtained the right to enforce Zirpoli's obligations under the Loan as part of the purchase agreement with OneMain, including the right to compel arbitration. Zirpoli renewed his objection to the motion, arguing that the assignment was illegal and void and

---

[5] JA 298–99.

5

that he was therefore not bound by the arbitration clause in the agreement between OneMain and Midland. The District Court denied Midland's motion to compel. In doing so, it focused on the validity of the assignment from OneMain and Midland and reasoned that was the dispositive question governing arbitrability. The District Court then denied as moot Midland's motion to stay. This appeal follows.

## II.[6]

We are once again confronted with the "mind-bending issue" of arbitration about arbitration.[7] Not too long ago, we answered the question of "[w]ho decides—a court or an arbitrator—whether an agreement exists, when the putative agreement includes an arbitration provision empowering an arbitrator to decide whether an agreement exists."[8] We held that "questions about the 'making of the agreement to arbitrate' are for the courts to decide unless the parties have clearly and unmistakably referred those issues to arbitration in a written contract whose formation is not in issue."[9] We are confronted with the question of whether a challenge to the legality of an assignment of a loan that is subject to an agreement to arbitrate challenges the very formation of the arbitration agreement. We hold that it does not. Accordingly, the District Court erred in

---

[6] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We review the denial of a motion to compel arbitration de novo. *Harper v. Amazon.com Services, Inc.*, 124 F.4th 287, 292 n.3 (3d Cir. 2021). Because Midland's renewed motion came after the parties had completed a period of discovery on the arbitration issue, we apply the same standard of review district courts use when resolving motions for summary judgment. *See Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013). We thus give the benefit of all reasonable doubts and inferences to the party opposing arbitration. *Griswold v. Coventry First LLC*, 762 F.3d 264, 270 (3d Cir. 2014).

[7] David Horton, *Arbitration About Arbitration*, 70 STAN. L. REV. 363, 370 (2018).

[8] *MZM Constr. Co., Inc. v. New Jersey Bldg. Labs. Statewide Benefit Funds*, 974 F.3d 386, 392 (3d Cir. 2020).

[9] *Id.*

finding that it had the authority to adjudicate this question of arbitrability.

## A. Section 4 of the Federal Arbitration Act

Zirpoli argues that the District Court did not have jurisdiction to resolve Midland's motion to compel in the first place because it is not a "party" under § 4 of the Federal Arbitration Act.[10] We must address this jurisdictional argument before reaching the question of arbitrability.

Section 4 provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction … [over] the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.[11]

Zirpoli claims that to be a party under this section, Midland must actually be a party to an arbitration agreement.[12] He reasons that Midland is not a party to the arbitration agreement because the assignment from OneMain was invalid, and thus, according to Zirpoli, Midland could not petition the court to compel arbitration.[13]

The argument does have facial appeal; however, we are not persuaded. The most natural reading of "party" in § 4 is that it refers to a party to a litigation. The Supreme Court has read "parties" in § 3 of the Act to mean "litigants."[14] And we presume that Congress uses words consistently throughout a

---

[10] Appellee Br. at 36–37.
[11] 9 U.S.C. § 4.
[12] Appellee Br. at 36.
[13] *Id.*
[14] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement.").

7

statute.[15] That suggests that "party" means "litigant" in both §§ 3 and 4.

Though context can rebut this presumption, we find that the context of § 4 here actually confirms that "party" means "party to litigation."[16] "Party" or "parties" is used eight times in § 4.[17] Even Zirpoli admits that many of these uses refer most naturally to litigants.[18] Accordingly, we conclude that "parties" in § 4 refers to litigants. Therefore, the District Court had jurisdiction to hear Midland's motion to compel arbitration.

## B. Arbitrability

Accordingly, we must resolve the "threshold arbitrability question"—who decides whether the parties must arbitrate: the arbitrator or the court—before a question of arbitrability can be decided.[19] In other words, courts must figure out whether the parties should arbitrate the question of

---

[15] Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012).

[16] *Id.* at 170–71; *see also* Frank H. Easterbrook, *The Absence of Method in Statutory Interpretation*, 84 CHI. L. REV. 81, 83 (2017) (noting that "every canon implicitly begins or ends with the statement 'unless the context indicates otherwise'").

[17] Zirpoli also points out that § 4 allows a "party aggrieved by the alleged failure . . . of another to arbitrate . . . [to] petition" the court to compel arbitration. Appellee Br. at 27. Zirpoli argues that "party" cannot be referencing a litigant as how could a "party" be a litigant *before* he has petitioned the court in the first place. *Id.* at 27. This argument falls short as it is not unheard of to refer to "litigants" as "parties" before a case is filed. *See, e.g.*, Fed. R. Civ. P. 4(a)(1)(A).

[18] Appellee Br. at 29 n.14. For example, after a party moves the court to compel arbitration, "[t]he court shall hear the *parties*[] and . . . shall make an order directing the *parties* to proceed to arbitration." 9 U.S.C. §4 (emphasis added). Typically, we speak of courts hearing and ordering *litigants*, not parties to contracts.

[19] *Mabe v. OptumRX*, -- F.4th --, No. 21-2192, 2022 WL 3094577, at *9 (3d Cir. 2022) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019)).

whether the parties agreed to arbitrate the dispute. Here, the District Court found that it must answer that question. Midland argues that the arbitrator should have decided this question.

Although Congress has "expressed a strong federal policy in favor of resolving disputes through arbitration,"[20] it does not follow that Congress intended parties to arbitrate disputes even in the absence of any agreement to arbitrate; arbitration remains a creature of contract.[21] The policy favoring arbitration is not intended to force arbitration where the parties to a contract did not agree to it.[22] Rather, it is merely intended to ensure that courts honor and enforce contractual undertakings to entrust agreed upon questions to arbitrators rather than to courts.[23] By expressly "plac[ing] arbitration agreements on equal footing with all other contracts," the Federal Arbitration Act merely "requir[es] courts to 'enforce such agreements according to their terms.'"[24] A court can compel a party to arbitrate only if the party agreed to arbitration. A party agrees to arbitrate if (1) "there is a valid agreement to arbitrate between the parties and, if so, (2) . . . the merits-based dispute in question falls within the scope of that valid agreement."[25]

However, these seemingly clear waters can become very murky when parties agree to delegate questions of arbitrability to arbitrators and a dispute thereafter arises about the legality or enforceability of the contract. Resolving such

---

[20] *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009)).

[21] *Id.* at 220 (quoting *Bel-Rey Co., Inc. v. Chemrite (Pty) Ltd.* 181 F.3d 435, 444 (3d Cir. 1999)).

[22] *See MZM*, 974 F.3d at 401.

[23] *See id.* at 397.

[24] *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 214–15 (3d Cir. 2019) (alteration omitted) (quoting *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018)). *See* 9 U.S.C. §§ 2, 4.

[25] *Flintkote*, 769 F.3d at 220 (quoting *Century Indem. Co.*, 584 F.3d at 527).

questions of arbitrability involves an analysis that is nearly identical to the two aforementioned steps.

The first step now targets the delegation clause: Is there a valid agreement to delegate questions of arbitrability between the parties? The Dissent would end the inquiry here, concluding that one does not.[26] But it would do so by answering the very question needed to determine the merits: whether the assignment from OneMain to Midland was valid.[27] If we were to answer that question at this point of the analysis, we risk pushing up against Supreme Court precedent that prohibits us from "deny[ing] effect to an arbitration provision in a contract that the court [may] later finds to be perfectly enforceable."[28]

Zirpoli does not dispute that he signed an agreement in which he agreed to arbitrate claims not only with OneMain but also with OneMain's "past, present or future respective . . . assignees."[29] Midland *is* an assignee. Perhaps the assignment will later be invalidated as there is indeed a question as to the validity of the assignment, but not as to whether the *agreement* itself is valid. Accordingly, there exists here a valid *agreement*. One that Zirpoli signed, binding him to arbitrate claims with OneMain and its future assignee—Midland.

Applying the Dissent's reasoning would also render the threshold question of arbitrability meaningless. If we were to apply the Dissent's reasoning and decide whether the assignment was valid in performing the first step of the inquiry, we would also be reaching the merits of the motion. In answering the merits, the Dissent happens to find the assignment invalid: "A valid assignment required one of two things. Either Midland needed a Pennsylvania license to hold this type of loan. Or the companies needed the Pennsylvania Secretary of Banking's blessing. [Midland] had neither."[30] This conclusion conveniently hides the fact that prematurely

---

[26] Dissent at 1.

[27] *Id.* at 2.

[28] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448–49 (2006)

[29] JA 82.

[30] Dissent at 2.

10

answering this question makes asking the "who decides" question pointless. Either we decide the assignment is invalid and deny the motion. Or we decide the assignment is valid and send the arbitrability question of whether the assignment is valid to an arbitrator to decide—even though we *already* decided it. This would be nothing more than performative, not to mention antithetical to the FAA's purpose of unwanted judicial interference.

Moreover, even if we were to reach the merits here, this issue would still need to be sent to an arbitrator because the assignment was valid. The Dissent is correct that, under the CDCA, a valid assignment would require either "a Pennsylvania license to hold this type of loan" or "the Pennsylvania Secretary of Banking's blessing."[31] But this assignment falls outside of the CDCA's purview as it is a charged-off loan—*i.e.*, no longer performing as a loan. Midland's purchase of a charged-off loan does not constitute extending loans or negotiating credit as the CDCA would prohibit. Both the language of the CDCA[32] and an amicus curiae letter filed by the Pennsylvania Secretary of Banking in a case recently before this court bolster this conclusion.[33] Accordingly, for all the reasons described above, we find that the first inquiry is satisfied as a valid agreement to delegate questions of arbitrability between the parties exists.

The analysis is also slightly different at the second step of the inquiry. There, the parties' intent to delegate arbitrability questions must be "clear and unmistakable."[34] Just as an arbitration agreement is "'severable' and independently enforceable from the rest of the contract in which it is

---

[31] *Id.*

[32] 7 Pa. Stat. and Cons. Stat. Ann. §§ 6201–6219 (West 2022) ("[N]o person shall engage or continue to engage . . . in the business of negotiating or making *loans* or advances or money on credit . . . ." (emphasis added)).

[33] Amicus Curiae Letter, Lutz v. Portfolio Recovery Assoc., No. 21-1656 (3d Cir. Feb. 15, 2022) (similarly concluding that the purchase of a charged off credit card loan did not require a CDCA license).

[34] *Henry Schein*, 139 S. Ct. at 531.

11

contained,"[35] a clause delegating a question to an arbitrator may also be severable from the arbitration agreement.[36]

Under this doctrine of severability, when an arbitration agreement contains a delegation clause, a challenge to arbitrability must be "directed at the delegation [clause] specifically to invoke a court's power to intervene."[37] However, that is not true if a party challenges the very *formation* of the arbitration agreement.[38] Courts have the authority to adjudicate formation challenges—even if there is a delegation clause—unless the parties have clearly and unmistakably referred formation issues to arbitration in a written contract whose formation is not in issue.[39] We have distinguished formation challenges in this context from validity or enforceability challenges; the latter must go to the arbitrator unless directed specifically at the delegation clause.[40] A validity or enforceability challenge is "either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced) or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."[41]

Zirpoli cites *MZM Construction Co. v. New Jersey Bldg. Funds* to claim that its challenge of the assignment constitutes a challenge to the arbitration agreement's formation (*i.e.*, no contract between Zirpoli and Midland was ever made).[42] But Zirpoli does not dispute that he entered into a valid arbitration agreement with OneMain. Nor does he dispute that OneMain assigned that agreement to Midland. His challenge to Midland's motion to compel arbitration instead targets the *validity* of the assignment from OneMain to Midland under the

---

[35] *MZM*, 974 F.3d at 397 (citing *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 105 (3d Cir. 2000)).

[36] *Id.* (quoting *Sandvik*, 220 F.3d at 105).

[37] *Id.* at 399 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010)).

[38] *Id.* at 402.

[39] *Id.*

[40] *Id.* at 397.

[41] *Mabe*, -- F.4th --, 2022 WL 3094577, at *9 (quotations omitted) (quoting *Buckeye*, 546 U.S. at 444).

[42] Appellee Br. at 41.

CDCA; Midland is not a party to the arbitration agreement. Under the terms of that contract only an assignee can collect on the Loan and force arbitration. Accordingly, determining whether Midland is a valid assignee goes directly to whether it can *enforce* arbitration as the agreement provides, not whether the agreement *exists*; it clearly does exist and Zirpoli does not argue to the contrary.

As Midland explained at argument, the District Court reasoned that the "legality of the assignment issue" disposed of the question of arbitrability.[43] This reasoning is contrary to the Supreme Court's instruction in *Buckeye Check Cashing, Inc. v. Cardegna*. To ensure that courts do not "deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable," *Buckeye* "permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void."[44] Moreover, the enforceability of the delegation clause is not determined by the potential invalidity of the arbitration agreement.[45]

Midland's status as a contractual party to the arbitration agreement does not go to the enforceability of the *delegation clause*, because of the severability doctrine. Accordingly, if the parties to the Loan agreement clearly and unmistakably intended to delegate the issue of enforceability of the contract (or any other issue) to an arbitrator, the challenge to the enforceability of the arbitration agreement must be decided by the arbitrator, not by a court. To conclude otherwise would render delegation clauses that explicitly extend to assignees meaningless; a party trying to avoid arbitrating the question of arbitrability could simply call into question the validity of the assignment. As explained above, this could deny effect to a delegation clause in a contract that the court later finds to be perfectly enforceable. This type of judicial interference is exactly what Congress sought to prevent in enacting the FAA. We are thus compelled to interpret a challenge to an assignment as one of contract enforceability, not formation. As the Supreme Court explained in *Buckeye*, "a challenge to the validity of the contract as a whole, and not specifically to the

---

[43] Transcript of Oral Argument at 15.
[44] *Buckeye*, 546 U.S. at 448–49.
[45] *See id.* at 448.

arbitration clause, must go to the arbitrator."[46] We realize that this rule may seem counterintuitive as it means that a court must defer to an arbitrator even where the agreement containing the arbitration clause is, itself, void or illegal. However, the Supreme Court has clearly rejected that argument, reasoning that the ultimate illegality of a contract does not automatically negate the parties' agreement that an arbitrator should resolve disputes arising from the contract.[47]

Accordingly, we must only determine if the parties to the Loan clearly and unmistakably expressed an agreement to arbitrate the issue of arbitrability. A plain reading of the text of the arbitration agreement shows that they did. The arbitration agreement provides that "any Claim . . . shall be resolved by binding arbitration."[48] Among other things, a claim "includes, without limitation, anything related to . . . the *arbitrability of any Claim* pursuant to th[e] Agreement, including but not limited to the scope of this Agreement and any *defenses to enforcement* of the Note or this Agreement."[49] A claim also includes "anything related to . . . any alleged violation [of a state statute], including without limitation . . . usury . . . laws." Read together, the arbitration agreement provides that an arbitrator shall resolve the arbitrability of defenses to enforcement, including alleged violations of state usury laws.

## III.

For the foregoing reasons, we will vacate the order of the District Court and remand with instructions that the Court grant the motion to stay and refer the matter to arbitration.

---

[46] *Id.* at 449.

[47] *Id.* at 447–49.

[48] JA 82.

[49] *Id.* (emphasis added).

BIBAS, *Circuit Judge*, concurring in part and dissenting in part.

I agree with my colleagues' reasoning in Part II.A that the District Court had jurisdiction under §4 of the Federal Arbitration Act. But because Midland had no valid agreement to arbitrate with Zirpoli, I would affirm.

As my colleagues recognize, a court has jurisdiction under §4 to resolve an arbitration motion made by a party to a *lawsuit*. Maj. Op. 8. But in deciding the merits of that motion, the analysis differs. To decide whether a *contractual* party must arbitrate, we "first consider … whether there is a valid agreement to arbitrate between the parties." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (internal quotation marks omitted). *Flintkote* does not ask whether there was an arbitration agreement with just anyone. It asks whether there was an agreement between the party seeking to compel arbitration and the party opposing it. *Id.* at 217, 222 (holding that even though others had agreed to arbitrate, the party against whom arbitration was sought had not). After all, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Id.* at 220 (internal quotation marks omitted).

My colleagues quote *Flintkote* but miss its meaning. Maj. Op. 9. They say only that "the very formation of the arbitration agreement" between Zirpoli and OneMain was never "in issue" and stop there. Maj. Op. 12 (emphasis omitted). So they dismiss Zirpoli's challenge as a dispute about enforceability and say the agreement entrusts such disputes to the arbitrator. *Id.* But Zirpoli never disputed the enforceability of his agreement with OneMain. Rather, he insists that he never had an

agreement with Midland. And it is Midland, not OneMain, that seeks to compel arbitration here.

Zirpoli is right. He never signed an arbitration agreement with Midland. And while Midland claims that it is the assignee of Zirpoli's agreement with OneMain, that assignment was invalid. A valid assignment required one of two things. Either Midland needed a Pennsylvania license to hold this type of loan. *See* 7 Pa. Stat. & Cons. Stat. Ann. §§ 6203.A, 6208; 41 Pa. Stat. & Cons. Stat. Ann. § 201(a). Or the companies needed the Pennsylvania Secretary of Banking's blessing. 7 Pa. Stat. & Cons. Stat. Ann. § 6214.I. They had neither. Only OneMain had the necessary license. And the Secretary never approved the assignment. So OneMain's assignment to Midland was invalid. Thus, Midland has no arbitration agreement with Zirpoli and no contractual right to force him out of court.

Today's holding confuses how we analyze the formation of arbitration agreements. Courts cannot start by asking, "Was an agreement formed?" Rather, they must ask, "Was an agreement formed *between these parties*?" Because the majority does not, I respectfully dissent in part.